IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO. 05-615 |
| | : | |
| **KEVIN RANKIN** | : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                                                      **August 4, 2006**

        This criminal prosecution under 18 U.S.C. § 922(g) against Defendant Kevin Rankin ("Rankin") is based on firearms found at Rankin's home and office during a search for evidence of various tax crimes. Presently before the Court is Rankin's Motion to Suppress. Therein, Rankin seeks to suppress the two firearms found in a safe at his home because the warrant that authorized the search of that location was allegedly overbroad and lacked probable cause.[1] For the following reasons, the Court denies the Motion to Suppress.

**I.      FACTS AND PROCEDURAL HISTORY**

        Rankin, along with Bishop Krabsz ("Krabsz"), co-owns and -operates two businesses in Philadelphia: an adult entertainment club known as Dangerous Curves and a restaurant/bar known as Ashburner Inn. As part of a joint investigation by the Internal Revenue Service ("IRS") and the Federal Bureau of Investigation ("FBI") into Rankin and Krabsz's relationship with former Philadelphia City Councilman Richard Mariano, the IRS came to believe that Rankin and Krabsz

---

[1] Rankin does not seek to suppress the firearms found at his office.

had committed certain tax crimes in connection with their corporate and personal tax returns.

On October 3, 2005, Laura A. Capra ("Capra"), a special agent for the IRS, applied for a warrant to search Dangerous Curves and Ashburner Inn, as well as Rankin's home, located at 3 North Columbus Boulevard, Pier 3, Suite 251, Philadelphia, Pennsylvania, for evidence of those tax crimes. In support of her application, Capra submitted an affidavit (the "Capra Affidavit") setting forth the basis for probable cause to believe that Rankin had committed the tax crimes and that evidence of those crimes would be located in the places to be searched.[2]

With respect to probable cause that Rankin had committed the crimes, the Capra Affidavit provided detailed allegations that Rankin willfully evaded federal payroll taxes for some employees of Dangerous Curves, evaded reporting requirements by structuring cash transactions, fraudulently under-represented his income on personal tax returns, and failed to file personal tax returns for certain years. These allegations were supported by a variety of sources, such as IRS records, Rankin's personal bank records, loan applications submitted by Rankin, and information provided by an FBI confidential informant.[3]

With respect to probable cause that evidence of those crimes would be found at Rankin's home, the Capra Affidavit relied on Capra's experience and training in investigating tax crimes, as well as specific evidence linking Rankin's home to the crimes alleged. The Capra Affidavit stated:

> Based on my discussions with senior special agents and my own training and experience, it is often typical for persons engaged in tax

---

[2] Two days later, on October 5, 2005, Capra applied to the District of New Jersey for a warrant to search Krabsz's home, which is located in Cherry Hill, New Jersey. The application included the same affidavit submitted in support of the application to this District.

[3] See Capra Aff. Part III.

> fraud and evasion to retain records of their transactions, including evidence of significant cash transactions, within their residence, place of business, or other places under their control.[4]

The Capra Affidavit presented five additional pieces of evidence in support of the above-quoted conclusion. First, FBI agents had observed Rankin leaving his house carrying a briefcase on five days throughout September 2005. Second, mail covers revealed that Rankin received personal bank and credit card statements at his home address. Third, mail covers also revealed that Rankin received "personal and monthly expense type bills"[5] at his home address. Fourth, electric utility provider records showed that Rankin received electric service at his home. Fifth, credit card records demonstrated that Rankin paid for internet access provided by NetZero, "a dial up internet service that most often is used with a computer located in the customer's residence."[6]

The Capra Affidavit set forth the list of items to be searched for and seized from Rankin's home in Attachment B-1. That list contained the following items:

> 1. All financial records, including bank statements, canceled checks, checkbooks, passbooks, journals, ledgers, checks, drafts, letters of credit, certificates of deposit, wire transfer documents, money orders, withdrawal tickets, deposit slips, money cash bands, records of mutual funds, stocks, bonds, records of real estate transactions, invoices, bills, loan documents, business and financially related correspondence and notes, certificates of insurance, lists of assets, records of safe deposit boxes, and all other items evidencing the obtaining, controlling, transfer, and/or concealment of assets and the obtaining, controlling, transfer, concealment, and/or expenditure of money.
>
> 2. All checks paid to employees for wages, including the employer's copy of the check stub, Forms W-2, and Forms 1099.

---

[4] Id. ¶ 27.

[5] Id. ¶ 33.

[6] Id. ¶ 35.

    3. All records of cash payments made to entities and individuals.

    4. All records of money and any other assets sent abroad.

    5. Address and/or telephone books, rolodex indices, business cards, and any papers reflecting names, addresses, telephone numbers, pager numbers, facsimile numbers, electronic mail addresses, and/or telex numbers of business associates, sources of supply, customers, employees, temporary workers, drivers used to transport workers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

    6. All tax records, including but not limited to, tax returns, IRS forms, tax forms of equivalent state and local agencies, and correspondence with the IRS or equivalent state and local agencies.

    7. All employee background records including applications for employment and personnel files.

    8. All corporate and/or business bookkeeping records and other financial records including trial balances, general ledgers, general journals, subsidiary ledgers and journals, disbursement records and/or journals, accounts payable ledgers and records, payroll records, loan receivable and payable ledgers, and cash disbursement journals.

    9. All corporate minute books, Stock Registers or other records reflecting ownership of corporate stock.

    10. All financial statements, bookkeeper's work papers and/or accountant's work papers used in the preparation of corporate and/or business records and tax returns.

    11. Electronic equipment, such as computers and fax machines, and relating manuals used to generate, transfer, count, record, and/or store the information described in items 1 through 10 of this attachment.[7]

Based on the Capra Affidavit, a magistrate judge in this District signed a search warrant authorizing a search of Rankin's home. The following day, the search was executed. During

---

[7] Id. Attach. B-1. Paragraph 11 included subsections further specifying the computer records to be seized.

the search, agents found a safe in Rankin's hallway closet between his bathroom and home office space. Inside the safe, agents found a black .357 caliber Ruger revolver and a silver .38 caliber Smith and Wesson revolver with an obliterated serial number.

The Government charged Rankin with two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Rankin filed the instant Motion to Suppress on April 13, 2006, and the Court held a hearing on his Motion on May 12, 2006. At the hearing, counsel for the parties agreed that no facts were in dispute and that the Motion to Suppress presented purely legal issues.[8]

## II.    DISCUSSION

Rankin seeks to suppress the firearms found at this home because he argues that the search of his home, conducted pursuant to a warrant, violated the Fourth Amendment. That Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[9]

Rankin contends that the search violated his Fourth Amendment right because the warrant was facially overbroad and lacked probable cause.

---

[8] Hr'g on Mot. to Suppress Tr. 5-6, May 12, 2006.

[9] U.S. Const. Amend. IV.

A.     **Overbreath**

Rankin argues that the warrant was unconstitutionally overbroad because it "fails to list the items to be seized with particularity, and instead provides a laundry list that is so encompassing it authorizes the search of places where no possible records of alleged tax crimes could conceivably be stored."[10]

Pursuant to the Fourth Amendment, a valid warrant must describe the place to be searched and the items to be seized with particularity. A warrant is impermissibly overbroad if it authorizes "a general, exploratory rummaging in a person's belongings."[11] Evidence seized pursuant to a general warrant must be suppressed.[12]

In United States v. Christine, the Third Circuit addressed an overbreath challenge similar to the present case.[13] In Christine, a criminal investigation and prosecution for fraud in connection with a federal home insurance program administered by the Department of Housing and Urban Development ("HUD"), the warrant at issue authorized the search of defendants' offices for, among other things, all folders, documents, checks, check stubs, bank statements, ledgers, journals, and correspondence relating to the fraud.[14] In addition, the warrant authorized the search for and seizure of "all other documents, papers, instrumentalities and fruits of the crime."[15] The Court upheld the warrant, explaining:

---

[10] Def.'s Memo. in Support of Mot. to Suppress at 7.

[11] Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).

[12] See Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979).

[13] United States v. Christine, 687 F.2d 749 (3d Cir. 1982).

[14] Id. at 751.

[15] Id.

> The warrant at issue cannot be invalidated as a general warrant for it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence. Rather, the warrant's clauses describe in both specific and inclusive generic terms what is to be seized: "all folders . . . all checks . . . all general ledgers (and) all correspondence . . . ." By directing the searching officers to seize all of these items, the magistrate, rather than the officer, determined what was to be seized. Neither is the final clause of the warrant ("all other documents, papers, instrumentalities and fruits of the crime") in the nature of a general warrant.[16]

Furthermore, Christine "made clear that search warrants and their supporting affidavits are to be judged 'in a commonsense and realistic fashion.'"[17] "The use of generic classifications in a warrant is therefore sufficient to delineate the categories of items to be seized when, due to the circumstances of the investigation, a more precise description is not feasible."[18]

Finally, "[t]he Fourth Amendment does not prohibit searches for long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described."[19] Accordingly, the Third Circuit, in a money laundering case, found that a warrant authorizing a search for a seizure of "receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence," in addition to computers containing electronic copies of these items, was not unconstitutionally general or overbroad.[20]

---

[16] Id. at 753.

[17] United States v. Atwell, 289 F. Supp. 2d 629, 635 (W.D. Pa. 2003) (quoting Christine, 687 F.2d at 760).

[18] Id.

[19] United States v. Ninety-two Thousand Four Hundred Twenty-two Dollars and Fifty-seven Cents, 307 F.3d 137, 148 (3d Cir. 2002).

[20] Id. at 144, 149.

Applying those principles here, the Court finds that the warrant authorizing the search of Rankin's home was not general or overbroad. The warrant, which incorporated the Capra Affidavit, authorized the seizure of all documents within clearly delineated categories of financial records. Thus, as in Christine, the warrant did not vest the executing officers with unbridled discretion because "the magistrate, rather than the officer, determined what was to be seized."[21] Likewise, the warrant's categorization of items—in lieu of a more precisely enumerated list of items—is permissible because more precise description was not feasible. Although the IRS had considerable evidence to believe that Rankin had evaded and falsified tax returns, it could not know exactly what documents and information existed to provide evidence of those crimes. The IRS's investigation required "piecing together many bits of evidence . . . . that, taken singly, would show comparatively little."[22] The fact that the warrant included a long list of items to be seized does not warrant a conclusion to the contrary: "Although the scope of the warrant was certainly extensive, the warrant was not general."[23]

### B.     Probable Cause

Rankin also argues that the firearms found at his home should be suppressed because the warrant authorizing the search lacked probable cause. He asserts that the Capra Affidavit did not present sufficient facts for the magistrate judge to conclude that evidence of the tax crimes he was suspected of committing would be found at his home. Rankin's argument is unavailing because the magistrate judge had a substantial basis for finding probable cause existed to search Rankin's home

---

[21] Christine, 687 F.2d at 753.

[22] Andresen v. Maryland, 427 U.S. 463, 480 n.10 (1976) (declining to invalidate a warrant as impermissibly general in a complex real estate fraud case).

[23] Ninety-two Thousand Four Hundred Twenty-two Dollars and Fifty-seven Cents, 307 F.3d at 149.

and, in the alternative, the good faith exception to the exclusionary rule applies.

### 1.    Substantial Basis for Probable Cause

When reviewing a motion to suppress for lack of probable cause, a federal district court must determine whether the magistrate judge had a "substantial basis" for finding that probable cause to search existed.[24] This standard requires reviewing courts to pay "great deference" to a magistrate's determination of probable cause.[25]

The Court notes that there is surprisingly scant authority in this Circuit on the issue of probable cause to search for evidence of tax crimes or documents more generally. Of course, even if a well-established body of authority existed, review of a probable cause determination must be rooted in common sense and based on the totality of circumstances in each case.[26] With that in mind, the Court turns to the authority most closely analogous to this case in an effort to aid its fact-specific analysis of whether the magistrate had a substantial basis for concluding that probable cause existed here.

The Third Circuit has stated:

> While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant. Instead, probable cause can be, and often is, inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might

---

[24] Illinois v. Gates, 462 U.S. 213, 238 (1983).

[25] Id. at 236.

[26] See id. at 238-39 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

hide stolen property."[27]

Writing for the Third Circuit in <u>United States v. Hodge</u>, then-Judge Alito applied these principles to uphold a finding of probable cause to search a defendant's home for evidence of drug crimes based on purely inferential evidence that the defendant would store evidence of his large-scale drug activities at his home.[28] In <u>Hodge</u>, "there [was] no direct evidence that drugs or drug paraphernalia would be located at Hodge's home."[29] However, there were numerous facts suggesting Hodge was an "experienced and repeat drug dealer who would need to store evidence of his illicit activities somewhere."[30] Based on those facts, the Court explained that "[i]t is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home."[31]

<u>Hodge</u> also based its holding on the opinion of an experienced police officer that Hodge's home would likely contain evidence relating to his drug activities.[32] "The magistrate judge was entitled to 'give considerable weight to the conclusions of [this] experienced law enforcement officer[] regarding where evidence of a crime [was] likely to be found.'"[33] Moreover, the officer's failure to supply more information linking Hodge's home to his criminal activity was insufficient to invalidate the warrant:

---

[27] <u>United States v. Jones</u>, 994 F.2d 1051, 1056 (3d Cir. 1993) (upholding magistrate's determination of probable cause to search a defendant's home where his home was close to the crime scene and to his co-defendants' homes, and probable cause to search his co-defendants' homes existed).

[28] <u>United States v. Hodge</u>, 246 F.3d 301, 305-07 (3d Cir. 2001).

[29] <u>Id.</u> at 306.

[30] <u>Id.</u>

[31] <u>Id.</u>

[32] <u>Id.</u> at 307.

[33] <u>Id.</u> (quoting <u>United States v. Whitner</u>, 219 F.3d 289, 296 (3d Cir. 2000)).

>   To be sure, "it would have been preferable if [the officer] could have supplied more information . . . ." Nonetheless, "the fact remains that he did bring the evidence . . . to a magistrate judge, who determined that there was probable cause to issue the warrant[]." "[A] 'grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." This preference for warrants further persuades us to hold that the magistrate judge had a substantial basis for finding probable cause.[34]

Furthermore, courts have provided persuasive authority regarding what showing is necessary to establish probable cause to search a home for evidence of a tax crime.[35] The affidavits in cases upholding determinations of probable cause uniformly paired an officer's expert conclusion that financial records are typically kept at a person's home with specific facts—often obtained from

---

[34] Id. (internal citations omitted).

[35] In Taxacher v. Torbic, a civil Bivens suit, plaintiffs challenged a search of their home for evidence of tax fraud as lacking probable cause. Taxacher v. Torbic, No. 99-74, 2000 WL 641616, at *6-9 (W.D. Pa. Feb. 23, 2000), aff'd, 251 F.3d 154 (3d Cir. 2000). The affidavit submitted by the IRS in support of the warrant—in addition to setting forth the basis for the government's belief that plaintiffs had committed tax fraud—explained that the financial records necessary to prove such fraud "are typically kept at business locations and residences." Id. at *3. After laying out a number of the principles referenced above, the court upheld the magistrate's determination of probable cause:

>   We find that, as a matter of law, the [IRS's] Affidavit, when read in its entirety, provides ample probable cause to support the issuance of the search warrants. It details the IRS-CID investigation of the . . . [plaintiffs], including special agent Torbic's corroboration of certain information. The totality of the circumstances indicate probable cause to believe both that the crimes had been committed, and that evidence of the crimes would be found at the places searched in this case.

Id. at *8.

Moreover, in related criminal and civil cases involving an affidavit similar to Taxacher, a court upheld a magistrate's determination of probable cause to search an individual's home for evidence of tax crimes. United States v. Leveto, 343 F. Supp. 2d 434, 442 (W.D. Pa. 2004) (denying a motion to suppress brought in a criminal prosecution for tax fraud); Leveto v. Lapina, No. 98-143 ERIE, 2000 WL 331902, at *9 (W.D. Pa. Feb. 5, 2000) (dismissing a civil Bivens claim for violation of the Fourth Amendment in connection with the same search leading to the criminal prosecution). In those cases, the IRS special agent's affidavit averred that "financial records are typically kept at business locations and residences" and contained evidence obtained from mail covers and a confidential informant that the defendant received and stored financial records at his home. United States v. Leveto, 343 F. Supp. 2d at 439, 442-43.

mail covers or confidential informants—that the person receives and stores financial records at his or her home. Many of the affidavits recognize the practical necessity underlying this approach: "in order to determine an individual's correct taxable income, indirect methods of proof must be utilized, including documentation of assets, liabilities and expenditures. Such financial records are typically kept at business locations and residences."[36] Echoing this practical reality, the Sixth Circuit recently pointed out, "One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home. Likewise, personal financial records are also usually stored at a person's home or place of business."[37] Thus, while these cases are not binding, they establish a helpful baseline for evaluating the instant case.

Here, considering the weight of authority, common sense, and the totality of the circumstances, the magistrate judge had a substantial basis for concluding that probable cause to search Rankin's home existed.

First, to the extent Hodge permits the reasonable inference that an experienced and high-volume drug dealer keeps evidence of his drug dealing at his home, it is less remarkable to infer that an individual suspected of engaging in a sophisticated scheme to cheat on his personal tax returns keeps evidence of that crime at his home. The Capra Affidavit carefully lays out numerous facts—drawn from various sources, including IRS records, Rankin's personal bank records, loan applications submitted by Rankin, and information provided by an FBI confidential informant—that

---

[36] United States v. Leveto, 343 F. Supp. 2d at 439.

[37] United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2002); see also United States v. Duran, Nos. 91-50177, 91-50180, 1994 WL 14089, at *1, 15 F.3d 1091 (9th Cir. Jan. 20, 1994) ("It was reasonable to conclude, based on common sense and the expert testimony of the FBI agents, that people will keep records of their financial transactions in their homes.").

Rankin significantly under-reported his income on certain tax returns.  Based on these facts, it was reasonable for the magistrate judge to infer that Rankin keeps personal financial documents tending to show his true personal income and expenses at home.[38]

Second, consistent with Hodge, the magistrate judge was entitled to give considerable weight to Capra's expert conclusion that people engaged in tax fraud and evasion keep evidence of those crimes in their home.  Rankin argues that Capra's expert conclusion is insufficient to support a finding of probable cause.  In support of his argument, he relies on United States v. Loy, which holds that an agent's "conclusory statement that people who collect child pornography commonly keep it in their homes is insufficient, in light of Loy's own assertion that he kept it in a storage facility, to provide the requisite nexus between the contraband and Loy's residence."[39]

Rankin's reliance on Loy is misplaced.  As a legal matter, Loy simply stands for the proposition that an agent's "experience and expertise, *without more*, is insufficient to establish probable cause."[40]  That proposition is wholly consistent with the proposition recognized by Hodge that a magistrate judge may consider an expert's conclusion along with other information in making a probable cause determination.[41]  As a factual matter, Loy is distinguishable from the present case

---

[38] Rankin argues, quite correctly, that "probable cause to arrest does not automatically provide probable cause to search the arrestee's home."  Jones, 994 F.2d at 1055.  However, the Court's conclusion is not based exclusively on the strength of the probable cause that Rankin committed tax evasion and fraud, but takes such probable cause into account as increasing the likelihood that Rankin's home contains evidence of those crimes.  See id. at 1055-56; Hodge, 246 F.3d at 307.

[39] United States v. Loy, 191 F.3d 360, 366-67 (3d Cir. 1999).

[40] Id. at 366 (emphasis added).

[41] Of course, "an expert opinion must be tailored to the specific facts of the case to have any value."  United States v. Zimmerman, 277 F.3d 426, 433 n.4 (3d Cir. 2002).  Despite Rankin's assertion to the contrary, Capra's opinion about where evidence would be was tailored to her thoroughly documented account of what crimes Rankin was suspected of committing.  Capra's opinion was also corroborated by facts showing that Rankin maintained financial records at his home relevant to proving those crimes.

because there the agent's expert conclusion directly contradicted the only other fact about where Loy kept evidence of his crime. Thus, the agent's conclusion could not furnish a substantial basis for probable cause. Here, however, Capra's conclusion further corroborated the other facts showing that Rankin received and stored financial documents at his home.

Third, evidence presented to the magistrate judge in this case meets the baseline set by similar tax cases. Like the affidavits in those cases, the Capra Affidavit pairs Capra's expert conclusion that people in Rankin's position keep evidence of their crime at their home with particular facts showing that Rankin received and stored financial records at his home. Specifically, IRS mail covers revealed that Rankin received certain financial documents, such as bank statements and utility bills, at his home. In addition, given that the allegations against Rankin involved under-reporting income earned from his business activities at Dangerous Curves and Ashburner Inn, the IRS surveillance of him carrying a briefcase from his home suggests he could be transporting relevant evidence between those businesses and his home.[42]

In light of all the circumstances, the Capra Affidavit provided a substantial basis for the magistrate judge to determine that there was probable cause to search Rankin's home for evidence of tax evasion and fraud.

### 2. Good Faith Exception

Even if such substantial basis for upholding the magistrate judge's probable cause determination did not exist, the good faith exception to the exclusionary rule applies here.[43] "The

---

[42] See, e.g., United States v. Laurins, 660 F. Supp. 1579, 1582 (N.D. Cal. 1987) (upholding a determination of probable cause to believe financial records would be found at defendant's home where, among other things, defendant was observed carrying a large briefcase to and from work).

[43] United States v. Leon, 468 U.S. 897, 922-24 (1984).

good faith exception instructs that suppression of evidence 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.'"[44] To assess whether the good faith exception applies, the Court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[45] "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception."[46] There are four situations, however, where the good faith exception does not apply:

> 1. Where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
> 2. Where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> 3. Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;
> 4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.[47]

None of those situations occurred in this case. Rankin does not argue, nor does any evidence suggest, that either of the first two situations occurred. With respect to the third situation, for all the reasons provided above, the Capra Affidavit contained sufficient indicia of probable cause to render the executing officers' belief in its existence reasonable. Hodge further supports this conclusion. There, the Court recognized that the magistrate's probable cause determination rested on "unsettled jurisprudence" because the Third Circuit had yet to decide whether a defendant's

---

[44] Hodge, 246 F.3d at 307 (quoting United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993)).

[45] Leon, 468 U.S. at 922 n.23.

[46] Hodge, 246 F.3d at 308.

[47] Zimmerman, 277 F.3d at 436-37.

appearance as a drug dealer sufficed under certain circumstances to infer that he would likely store evidence of his drug dealing at his residence.[48]  Thus, the Hodge Court applied the good faith exception, reasoning that "'the officers could not be expected to know that the magistrate judge made an erroneous probable cause determination' due to insufficient evidence connecting Hodge's house to drug dealing."[49]  Likewise, to the extent that the law governing tax cases like the present one is unsettled, the officers' belief that the Capra Affidavit supplied probable cause to search Rankin's home was not "entirely unreasonable."  Finally, with respect to the fourth situation, the warrant was not facially overbroad such that it failed to particularly describe the place to be searched and items to be seized.[50]  Therefore, in the alternative, the two firearms found at Rankin's home are admissible under the good faith exception.

At oral argument, Rankin's attorney briefly and generally objected to the fact that the firearms were found in a safe.[51]  He appears to argue that this fact further demonstrates why the IRS agents' execution of the warrant exceeded the reasonable boundaries of the Fourth Amendment.  The Court disagrees.  The agents executing the warrant could reasonably conclude that the safe contained important financial documents material to their investigation.  Their discovery of firearms rather than financial documents does not undermine the reasonableness of that conclusion.

---

[48] Hodge, 246 F.3d at 309.

[49] Id. (quoting Loy, 191 F.3d at 368-69).

[50] See Part II.A *supra*.

[51] Hr'g on Mot. to Suppress Tr. 23.

**III.     CONCLUSION**

   Since the warrant at issue was not overbroad and was supported by probable cause, and since the firearms are admissible under the good faith exception, the Court denies Rankin's Motion to Suppress.  All items obtained by the Government through the execution of the search warrant, including the two firearms found in the safe at Rankin's home, are admissible at Rankin's trial if otherwise relevant and admissible.

   An appropriate Order is attached.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 05-615** |
| **KEVIN RANKIN** | : | |

### ORDER

**AND NOW**, this 4th day of August 2006, upon consideration of Defendant's Motion to Suppress Evidence [Doc. #38], the Governments' Responses thereto [Docs. #39 and #42], and oral argument presented at the hearing held on May 16, 2006, and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendant's Motion is **DENIED**.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe

**CYNTHIA M. RUFE, J.**